Good morning. I'm Helga White representing Lawrence Ormsby. I would like to reserve 3 minutes of my 10-minute time for rebuttal. You may, but all counsel are reminded that the time shown on the clock is your entire time. We don't subtract it for you. Yes, Your Honor. So you'll have to keep track of your own time. I would like to bring to the Court's attention two decisions that were rendered approximately two months after our reply brief was due. Both were decided on September 23, 2008. One was not was decided by the Ninth Circuit Court of Appeals, and that was In re Barboza, et al., 545. Could you please give those citations to the clerk? It doesn't do us any good right now. And also, you should have given it to us before. I will. Thank you. The second decision was Judge England's decision whereby, in this particular case, denying the motion for attorneys' fees brought by First American Title Company. In the East End Bankruptcy Court granted First American Title Company's motion for summary judgment and declared the Nevada State court judgment non-dischargeable under the larceny prong of 523A4. The district court affirmed, but under both Section A4 and A6. There are material issues, general issues of material fact for trial in this case, and it is our opinion that the grant for summary judgment was improper. I'm unaware, as to larceny, of any case where this Court specifically has held that the debt is non-dischargeable under the larceny prong of 523A4. Applying Federal common law, various courts around the country require the finding of specific fraudulent intent to hold larceny. Where would you get that from? As I understand the concept of larceny, it has nothing to do with fraud. It has nothing to do with fraud at all. Yes. The ---- I mean, fraud in the sense of a relied-upon misrepresentation. That is not my understanding from the various courts around the country on pages You cite mainly embezzlement cases, which are entirely different. You cite primarily embezzlement cases. That is correct. But that's not larceny. So what's the authority that larceny requires fraud? Embezzlement states that there must be an indicia of fraud. Okay. And then it adds, in dicta, for larceny, you ---- the initial taking must have been wrongful. It doesn't take away from the indicia of fraud. This is the Littleton case in the Ninth Circuit that deals with the embezzlement issue. As a common law matter, does the term larceny have anything to do with fraud? As a common law crime, does larceny involve fraud necessarily? The courts differ in the country. Some say that it does require an indicia of fraud. What case do you have that says that larceny requires fraud? The Marriott International Inc. v. Suarez on page 12 of my opening brief. Well, I'm asking you about a criminal case, a historical criminal case of any kind, where larceny requires fraud. Where larceny requires ---- in this Court it has never been held that ---- In any case, any common law concept where larceny requires fraud, any common law crime. I'm just referring to the cases that I've cited on page 12 and 13 of the opening brief. For example, a Washington bankruptcy case, 1994, the Fraternal Order of Eagles v. Mercer. It says there, it says, for purposes of embezzlement, fraudulent intent is an essential element of plaintiff's case. But then embezzlement is the rightful taking but the wrongful keeping of the property. And larceny, as I understand it, just adds wrongful taking to the element, but it doesn't take away the fraudulent intent requirement. I don't know what this Court is going to hold, whether there's a fraudulent intent requirement for larceny, because I don't believe it has been decided by this Court. I'm just questioning whether misappropriation of trade secrets would rise to the level of common law larceny, because misappropriation of trade secrets under the Nevada Act. Sotomayor, wasn't this a little more than misappropriation of trade secrets? This was misappropriation of the title records. There weren't secrets how you do it. It was the actual information that was taken and used when it would have had to – there would have had to be a fee paid to use it without the unauthorized taking of this information. That's not trade secrets. Correct. The findings of facts from the Nevada State Court are the only evidence presented to the Bankruptcy Court. The findings of facts imply that the judge did not rely on collateral estoppel or res judicata. He used the findings and then made, as I understood it, additional findings based on the record and on the conviction. So it wasn't that he was simply taking the Nevada conviction as dispositive. This was at a stage of motion for summary judgment. Right. It is our opinion that it was improper for the judge to weigh the evidence, but instead should have focused on whether or not there was a material issue. All right. What's the material issue? What's the material issue? What is the material issue? What would be a theory based on this – on the record and the findings of the State Court, but not just the findings – as to which there would not be the requisite intent for larceny? What inference could you draw that was contrary to the one that was right? Under the Nevada State Court, under the Nevada law, misappropriation of trade secrets, which is the basis for this particular judgment, can be done if there was even an unlawful disclosure of the trade secrets. Did the district court in this case have the record in the Nevada case as well as the judgment? This – Did the district court in this case have the record in the Nevada case as well as the judgment? No. The district court in this case only had the judgment. Did he have any other information? No. No additional information. Well, he seemed to have, because you recited facts. Where are those facts coming from? The judgment refers to the Nevada code sections of violation of trade secret. And I went into the code, the Nevada code, and pulled out the statement of what is misappropriation. But he, the bankruptcy court, the district court had the State court findings. Weren't they part of the order granting judgment? That is correct. So it didn't just have a judgment with no facts behind it. It had facts, as found by the State court. Correct. There were findings of facts in the judgment, and that is the only thing that the court had. Right. I believe my time is up. I don't want to reserve three minutes. We only have one, but that's okay. Thank you. May it please the Court. James Teamster on behalf of First American Title Company of Nevada, the appellee in this matter. Your Honors, this case involves summary judgment by way of a motion for summary judgment, which was reviewed by the district court de novo, and also reviewed by this court de novo. The Nevada State court entered findings of fact and conclusions of law which were given preclusive effect on issue preclusion grounds, in other words, collateral estoppel. As a result of a review of those findings and a determination that they were sufficient to support the causes of action alleged in the complaint, the district court decided on two independent grounds that the debt to First American Title Company of Nevada in this case was nondischargeable. The first ground for nondischargeability, independent of the second ground, was the ground of larceny that had been committed by the debtor in this case, which arises under Section 523A.4 of the Bankruptcy Code. As this court knows, the definition of larceny is relatively straightforward. It's the felonious taking of another's personal property with the intent to convert it or deprive the owner of its use. No more, no less. Fraud is not a requirement for larceny. Rather, intentional wrongdoing is the requirement for larceny. There is ample evidence in this record of intentional wrongdoing. We know, and it's recited by the district court, that an individual employee of First American was hired for the exact purpose of taking various files, including trade secrets, but not exclusively trade secrets, preliminary title reports, documents, other types of work product of First American title, in effect to avoid the necessity of going and purchasing a license in order to obtain a competitive advantage over First American. In fact, the defendant in this case well knew the consequences of his actions. He well knew they were wrongful because he had, in fact, licensed one of a multiple series of title plans that were necessary in order to conduct business in the state of Nevada as a title company. Not only did he acquire those, he assisted his employee to acquire, copy, and in fact impressed upon the bankruptcy court, the district court, and the Nevada state court was the fact that the defendant was found to have gone to a separate copying service in another part of the state in a different town to actually conduct the copying of the records so that he wouldn't be found out, so that it could be done surreptitiously. All of this is extensively in the record. The findings of fact and conclusions of law of the Nevada state court matter were attached to the original complaint in bankruptcy court. All of those facts were set forth in detail, and I submit they were sufficient to support the finding of larceny in this case. I believe that the appellant's position in this case represents in this reading of    I don't have any other cases citing the embezzlement provisions and requirements of the cases of this circuit. She does seem to have a couple cases where larceny, bankruptcy cases where larceny was said to involve fraud. I don't know why they say that. I think those cases, if you look at them, Judge Berzon, were from out of our state, out of our circuit for the most part. I know that. I'm not asking you that, but they may have been thoughtless and not pertinent to the case, but they just say it. Yeah. I think we distinguish those cases in our brief. I know that one was based upon a Virginia statute that was very unique. I know another one was based upon an interpretation of a different state's law that also was unique. I think that often the language was somewhat loose and not particularly well-reasoned when they talked in generalized terms of fraud. And I think one of the problems, Your Honor, is that distinguishing those sub-provisions of Section 523 is difficult because some of them do specifically refer to fraud. And I think in the Court's thinking sometimes in a bankruptcy court that more frequently deals with fraudulent non-dischargeability issues than the issue specifically of larceny, which is somewhat unique in bankruptcy proceedings, carries that concept unwittingly into the decision. Well, why is it just more straightforward to affirm on the other ground, because we don't have to get into the niceties of what's larceny law? Either ground is sufficient, Your Honor. Willful and malicious injury. So as to the second, I gather the argument is that there wasn't the – it's the injury that needs to be proven and that the Nevada fact findings don't suffice for that purpose? Well, that's certainly the argument of the appellants, Your Honor. But I think that the district court was extremely clear in going through the facts that demonstrated the willfulness of the injury. Of course, that involves in this circuit a subjective motive to inflict injury or a subjective belief that injury was substantially certain to occur. But I think that the injury was, first of all, proven in the Nevada State Court, and secondly, it was hardly in doubt that setting up a competitive title company, taking the other title company's employees, enlisting them to take documents, papers, other trade secrets would not directly injure that company's ability to continue business. In fact, the measure of damages was based upon exactly the type of profit that First American could expect to have made from the kinds of searches that were done using its own stolen trade secrets and documents. What are these? Are these trade secrets? Well, the title business is very unique, Judge Schroeder. You know, you could theoretically, as done in some states in the East, hire a lawyer or attorney to go down and search the records individually and write an actual legal opinion on the state of title. I used to have to do that as a young associate. In Philadelphia? That was many years ago. Judge Roth, I'm sure that in Pennsylvania that's a requirement. Delaware. Oh, Delaware. Well, the commonwealths, you know, do require that kind of title search. We have an industry here, and that industry needs to be protected. It's an industry that streamlined the entire process of searching title. It's to facilitate sales of real estate and make them easier, less expensive, less time-consuming. The real trade secret aspect of it is the way these title plants are created and compiled. They are, you know, plants that have organized the records. I guess my question, are they different for each title company? Do they have their own way of doing this? Not necessarily. So basically information, right? And it's the information that is valuable, not how the information was acquired, but the fact that it is acquired and is there to permit title searches to be done. That's correct. And it's how it's compiled as well, in a fashion that makes it easy to actually search the records. Often these title plants are created by one or more title companies. They will get together and start a project to create a title plant for a given period of time for a given area or region. Is this like software? It's becoming more that way. Originally it wasn't software. Originally it was an analog sort of handwritten kind of approach, but those records have now, of course, all become computerized. They're becoming more computerized as we continue. So what were they here? A mixture of various types of records, and the plants are generally broken down into periods of time. So the older plants tend to be the more difficult to use. The newer plants tend to be the more computerized and the easier to search. In any event, I think that the district court was very good in its analysis and following exactly what this court has said are the elements of each one of these two independent grounds for determining non-dischargeability in this case. The second independent ground was the willful and malicious injury to the title company under 523A6. And we talked about the willful and the circumstantial evidence which is sufficient to support willful, and that's been found by this circuit as well. But secondly, the court did split, as required by In Re Su, the willfulness from the maliciousness and pointed to separate facts that met the four criteria for determining the maliciousness prong of willful and malicious under 523A6. It found that there was a wrongful act done intentionally, necessarily causing injury, and done without just cause or excuse. In each instance, the memorandum decision of the district court describes the facts and the findings of fact that support those elements. Thank you very much. Thank you, counsel. In one minute, I just wanted to add that the title plans were based on public records that were available to everyone. But they're very difficult to use, and I can attest, as a young associate, how much time you spent going through indexes and volumes. No question. Thank you, Your Honor. Thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Berzon, Roth